**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PENDLETON DIVISION**

**DOUGLAS T. SMITH,**

Plaintiff,

v.

**DANIEL J. COULOMBE, *et. al*.,**

Defendants.

Case No. 2:11-cv-531-SU

**OPINION AND ORDER**

Brent H. Smith, Baum Smith, LLC, P.O. Box 967, 1902 Fourth Street, Suite 1, La Grande, OR 97850. Of Attorneys for Plaintiffs.

Steven A. Kraemer, Kari A. Furnanz, Hart Wagner LLP, 1000 S.W. Broadway, 20th Floor, Portland, OR 97205. Of Attorneys for Defendant.

**SIMON, District Judge**.

**BACKGROUND**

Plaintiff Douglas T. Smith asserts a claim for relief against Defendants Daniel J. Coulombe, Darryl Johnson, and the City of Hermiston under 42 U.S.C. §1983 and three pendent state claims for retaliation, intentional interference with economic relations, and intentional infliction of emotional distress. Smith is employed as a police officer by the City of Hermiston and at all relevant times Coulombe was the Hermiston Police Chief and Johnson was a Hermiston police sergeant or acting lieutenant and was senior to Smith in the chain of command. Smith moves to compel discovery of: (1) Coulombe's separation agreement with the City; (2) portions of the personnel files of Coulombe, Johnson and Jason Edminston (the Hermiston

Police Chief after Coulombe) that mention Plaintiff or are in any way related to the allegations in Plaintiff's complaint; (3) all documents related to the internal investigation of the City of Hermiston Police Department performed in October, November, and December of 2010; and (4) all documents, including audio recordings, of the internal investigation of the alleged insubordination of Plaintiff and alleged controversial conduct of Johnson. Dkt. 14. Defendants object to providing the requested materials on the grounds that the materials are privileged attorney-client communications, subject to the work-product doctrine, and protected by state and federal privacy and confidentiality laws.

On July 10, 2012, Magistrate Judge Patricia Sullivan heard oral argument and ordered Defendants to produce Coulombe's separation agreement and the internal investigation report prepared by Lieutenant Tim Beinert. Dkt. 31. Those documents have been produced. Judge Sullivan further ordered that the investigation reports and related documents prepared by Craig Stoelk, an independent investigator hired by the Hermiston City Attorney, and the requested personnel files be provided for an *in camera* review by the Court. Stoelk had conducted two investigations and issued two reports, one relating to the allegations by Smith of police misconduct and corruption (the "First Stoelk Report") and one relating to certain conduct of Coulombe (the "Second Stoelk Report").

On October 2, 2012, Judge Sullivan issued a written order (Dkt. 39), finding that: (1) Coulombe's separation agreement had been produced; (2) only two pages of the personnel files of Coulombe, Johnson, and Edminston are responsive to Plaintiff's request, and Defendants do not object to producing those two pages, provided appropriate redactions are made; (3) the "Beinert Report" had been produced; (4) documents relating to the Stoelk investigation, including both Stoelk reports, are responsive, and any attorney-client privilege or work-product

immunity was waived; (5) the audio recordings of interviews conducted by Stoelk are responsive, were intended to obtain background factual information and were not intended to be confidential, and thus are not protected by the attorney-client privilege or work-product doctrine; and (6) the City Attorney's personal notes and emails with City officials and claims representatives are protected by the attorney-client privilege. Based on these findings, Judge Sullivan ordered Defendants to produce to Plaintiff documents relating to the Stoelk investigation (including both Stoelk reports), the audio recordings of interviews, and documents sent to third parties.

The parties sought correction of Judge Sullivan's Order dated October 2, 2012, regarding the production of documents transmitted to one third party, Bruce Bischof, and Defendants requested supplemental briefing on the application of 29 U.S.C. § 2002(2) to the Second Stoelk Report, which is the report relating to certain conduct of Coulombe. Judge Sullivan allowed these requests, reviewed the additional information, withdrew the October 2, 2012 Order, and issued a Revised and Supplemental Order on Motion to Compel dated November 30, 2012 ("Revised Order"). Dkt. 45.

In the Revised Order, Judge Sullivan found that: (1) Bischof is a labor attorney who represents the City of Hermiston and thus communications between him and the City Attorney are protected by the attorney-client privilege; (2) the Stoelk investigation and the First Stoelk Report were created primarily in preparation for this lawsuit and are thus protected, but the attorney-client privilege and work-product protection have been waived based on voluntary disclosures by Defendants; (3) the interviews conducted by Stoelk were not intended to be confidential and thus are not protected by attorney-client privilege or the work-product doctrine; (4) the Second Stoelk Report arose out of issues that were discovered during the investigation

into Plaintiff's allegations and is relevant to this lawsuit, but it was not prepared principally in anticipation of litigation, accordingly, it is not afforded work-product or attorney-client privilege protection; (5) production of the Second Stoelk Report does not violate Oregon law relating to exemptions to public disclosure of certain public employee information; (6) production of the Second Stoelk Report does not violate Oregon law relating to polygraph examinations; (7) production of the Second Stoelk Report does not violate 29 U.S.C. § 2002(2) relating to polygraph examinations; and (8) production of the Second Stoelk Report does not violate federal privacy law. Judge Sullivan ordered the production of the Stoelk investigation, including the audio files of the interviews, both Stoelk reports, redacted copies of the two pages from the personnel files, and non-privileged documents from the City Attorney's files.

Under the Federal Magistrates Act, the Court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate." Federal Magistrates Act, 28 U.S.C. § 636(b)(1). If a party files objections to a magistrate's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3). For those portions of an F&R to which neither party has objected, the Magistrates Act does not prescribe any standard of review: "There is no indication that Congress, in enacting [the Magistrates Act], intended to require a district judge to review a magistrate's report[.]" *Thomas v. Arn*, 474 U.S. 140, 152 (1985); *see also United States. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.) (*en banc*) (the court must review de novo magistrate's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Magistrates Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory

Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate's recommendations for "clear error on the face of the record."

Defendants timely filed objections to both the October 2nd Order (Dkt. 42) and the November 30th Order (Dkt. 46), to which Plaintiff responded (Dkt. 49). Defendants object to the portion of Judge Sullivan's recommendation finding waiver of the attorney-client privilege and/or work-product doctrine with respect to the two Stoelk reports and related investigation material.

## DISCUSSION

### A. Standards for Attorney-Client Privilege and Work-Product Doctrine

The federal law of privilege applies in claims arising under a federal question. Fed. R. Evid. 501. "Where there are federal question claims and pendent state law claims present, the federal law of privilege applies." *Agster v. Maricopa County*, 422 F.3d 836, 839 (9th Cir. 2005). (citations omitted). Although federal law controls, state law may still be considered when state actors are involved. *See, e.g. Doubleday v. Ruh*, 149 F.R.D. 601, 605 n.3 (E.D. Cal. 1993) ("However, the fact that federal law controls does not make a discussion of state law entirely irrelevant where state actors are involved…."); *Kelly v. City of San Jose*, 114 F.R.D. 653, 656 (N.D. Cal. 1987) ("None of this means, however, that federal courts should wholly ignore state laws, or rights recognized by state governments, when analyzing privilege issues in civil rights cases.").

#### 1. The Attorney-Client Privilege

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *U. S. v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citation omitted). The party asserting privilege has the burden of establishing the applicable privilege. *Id*. The attorney-client privilege exists where: "(1) legal

advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *Id*. (quotations and citation omitted). However, "because it impedes full and free disclosure of the truth, the attorney-client privilege is strictly construed." *U. S. v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002) (quotations and citation omitted). It is vital to the privilege "that the communication be made in confidence for the purpose of obtaining *legal* advice *from the lawyer*." *U.S. v. Gurtner*, 474 F.2d 297, 298 (9th Cir. 1973) (emphasis in original) (quotations and citation omitted).

**2. The Work-Product Doctrine**

The work-product doctrine "is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *Admiral Ins. Co. v. United States District Court for the District of Arizona*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3). Documents or the compilation of materials prepared by agents of the attorney in preparation for litigation may be covered by the work-product doctrine. *Richey*, 632 F.3d at 567. To qualify for work-product protection, materials must: "(1) be prepared in anticipation of litigation or for trial and (2) be prepared by or for another party or by or for that other party's representative." *Id*. (quotations and citation omitted).

Where materials are prepared for a "dual purpose," meaning they are not prepared exclusively for litigation, then the "because of" test applies—dual purpose documents are deemed prepared in anticipation of litigation if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *Id.* at 568 (quotations and citation omitted).

Courts must view the totality of the circumstances and determine whether "the document would not have been created in substantially similar form but for the prospect of litigation." *Id*. (quotations and citation omitted).

The work-product doctrine affords special protections for materials that reveal an attorney's mental impressions and opinions ("opinion" or "core" work product). *Admiral Ins. Co.*, 881 F.2d at 1494; Fed. R. Civ. P. 26(b)(3)(B). Other materials, however, may be ordered produced upon a showing of substantial need for the information and that it cannot be otherwise obtained without undue hardship. *Admiral Ins. Co.,* 881 F.2d at 1494; Fed R. Civ. P. 26(b)(3)(A)(ii). To obtain "opinion" work product, a party must show that the mental impressions of counsel are at issue and the need for the material is compelling. *Holmgren v. State Farm Mutual Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992).

The primary purpose of the work-product doctrine is to "prevent exploitation of a party's efforts in preparing for litigation." *Admiral Ins. Co.*, 881 F.2d at 1494. Work-product protection, however, like the attorney-client privilege, is waivable. *Richey*, 632 F.3d at 567.

**B. The First Stoelk Report and Investigation**

**1. The information is not protected by the attorney-client privilege.**

Stoelk's investigation, interviews, and reports fail to meet several prongs of the attorney-client privilege test. Stoelk is not an attorney, neither his interviews nor his reports provided legal advice, the interviews were not confidential such that the attorney-client privilege could attach because third parties were allowed to attend the interviews, the interviewees were not "clients" of Stoelk, nor of the Hermiston City Attorney for whom Stoelk was acting an agent, and the interviewees were not seeking legal advice from Stoelk or from the City Attorney. Thus, the First Stoelk Report and investigation are not protected by the attorney-client privilege. *See, e.g., Garcia v. City of El Centro*, 214 F.R.D. 587, 590-91 (S.D. Cal 2003) (interviews conducted

by claims adjuster not protected by attorney-client privilege because he was not an attorney and was not conducting the interviews to provide legal advice to the interviewees); *Griffith v. Davis*, 161 F.R.D. 687, 694-97 (C.D. Cal. 1995) (statements made during investigation not subject to attorney-client privilege because the interviews were mandatory and were done, in part, to determine whether police misconduct had occurred and thus the interviews were not conducted primarily to obtain legal advice and were not confidential); *Gonzales v. Municipal Court*, 136 Cal. Rptr. 475, 479-80 (Cal. App. 1977) (statements made during police internal affairs investigation not subject to attorney-client privilege because they could be used in disciplinary action against the officer and thus were not confidential).

**2. The information is protected by the work-product doctrine.**

Courts consistently hold that evidence gathered in the course of an internal police investigation is discoverable and not protected by the work-product qualified immunity. *See, e.g.*, *Collins v. Mullins*, 170 F.R.D. 132, 135 (W.D. Va. 1996); *Kelly*, 114 F.R.D. at 659. This is because police departments are under an "affirmative *duty*, in the normal course of serving their public function" to investigate allegations of police misconduct and thus such investigations are generally not prepared primarily in anticipation of litigation and the policies that underlie the work product doctrine are inapplicable. *Kelly*, 114 F.R.D. at 659 (emphasis in original). Despite this general rule, however, the "anticipation of litigation" requirement of Rule 26 is fact-specific, and courts should "decipher the driving force behind the preparation of the documents sought to be discovered." *Collins*, 170 F.R.D. at 135.

Here, there are two types of alleged police misconduct that were investigated. The first is police corruption alleged by Plaintiff. The second is misconduct by Plaintiff alleged by civilians. A "routine" internal police investigation into the latter was conducted by Beinert and that report has been produced. To the extent there is information from Beinert's investigation (or any other

internal investigation into the relevant allegations by civilians of misconduct by Plaintiff) that has not been produced, it is hereby ordered to be produced. As for the former, it appears that Coulombe conducted some level of an investigation into Plaintiff's allegations of police corruption and coercion, and the records of his investigation, if any (and to the extent not already produced), are hereby ordered to be produced by Defendants. To the extent any other internal affairs department or "routine" investigation was conducted relating to Plaintiff's allegations of police corruption and coercion, such records are hereby ordered to be produced.

There does not, however, appear to have been a thorough investigation into Plaintiff's allegations of police corruption and coercion until Stoelk's investigation. Stoelk was hired by the City Attorney in response to the tort claims notice submitted by Plaintiff, and Stoelk's investigation was not a "routine" internal police investigation. Stoelk is an outside investigator hired by the City Attorney to ascertain the veracity of Plaintiff's claims and to determine whether there were additional instances of alleged coercion to change police reports or other, similar, misconduct. Thus, the original Stoelk investigation had a dual purpose—to ascertain information to help prepare the defense against Plaintiff's potential tort claims, and to determine, more broadly, whether police misconduct of the type alleged by Plaintiff was occurring. Although the investigation had a dual purpose, it would not have been conducted in the manner it was conducted without the threat of litigation. In fact, until litigation was threatened and the City Attorney got involved, it does not appear that there was much of an investigation into Plaintiff's allegations at all. Accordingly, because the Stoelk investigation would not have happened "but for" the threat of litigation, the original Stoelk investigation and the First Stoelk Report are subject to the qualified immunity of the work product doctrine. *Richey*, 632 F.3d at 568.

**3. Plaintiff demonstrates a substantial need and undue hardship and is therefore entitled to obtain the protected information.**

Federal Rule of Civil Procedure 26(b)(3)(A)(i)-(ii) establishes that a party may obtain information protected by the work-product doctrine if the information is otherwise discoverable and the party shows that it "has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). Federal Rule of Civil Procedure 26(b)(3)(B) provides greater protection for the mental impressions, conclusions, opinions or legal theories of a party's attorney or other representative concerning the litigation. The former is often referred to as "fact" work product, and the latter is often referred to as "opinion" or "core" work product.

The First Stoelk Report and related investigation contain factual evidence gathered during the investigation and do not contain the mental impressions or thoughts of an attorney. Accordingly, they are "fact" work product as opposed to "opinion" work product and can be ordered produced upon a showing of substantial need and undue hardship. *See Nelson v. Geren*, No. 08-CV-1424-ST, 2010 WL 3491360 at *4 (D. Or. Aug. 31, 2010) (noting that no cases were cited for the proposition that the mental impressions or opinions of a party representative who is not an attorney are entitled to the "core" work-product protection and declining to so hold in the absence of Ninth Circuit authority); *see also Garcia*, 214 F.R.D. at 596-97 (insurance adjuster investigation report into alleged police misconduct prepared in anticipation of litigation subject to substantial need/undue hardship analysis); *Doubleday*, 149 F.R.D. at 607-08 (district attorney factual investigation into alleged police misconduct including witness statements, officer statements, photographs, and the like subject to substantial need/undue hardship analysis); *In re Healthsouth Corp. Sec. Litig.*, 250 F.R.D. 8, 12 (D.D.C., 2008) (attorney memoranda of interview conducted by non-attorney was "fact" work product).

Plaintiff alleges police corruption, coercion, and other serious misconduct. The First Stoelk Report and investigation are directly relevant to Plaintiff's claims and contain potentially critical evidence or information that could lead to critical evidence. Thus, Plaintiff has a substantial need for such materials. *See, e.g.*, *Crosby v. City of New York*, 269 F.R.D. 267, 280 (S.D.N.Y. 2010) (noting that in cases of alleged police misconduct, courts have regularly held that plaintiffs have a substantial need to discover statements made to investigators and finding that statements of officers not directly involved in the alleged misconduct are similarly significant). Plaintiff would also encounter undue hardship in obtaining the evidence elsewhere. As aptly summarized by one court in evaluating a similar case:

> If such allegations are true, the best evidence of these improprieties would be the contemporaneous statements of the witnesses, especially those of the sheriff's officers involved. While it is true that the sheriff's officers and other witnesses could be deposed, the passage of time and the present, potential bias of the defendants may color recollections such that what was said at the time cannot be accurately deciphered. In short, there is a substantial need for the contemporaneous information, and an undue hardship in attempting to reconstruct the information at this time.

*Doubleday*, 149 F.R.D. at 608; *see also Boyd v. City and County of San Francisco*, No. C-04-5459 MMC (JCS), 2006 WL 1141251 at *4 (N.D. Cal. May 1, 2006) (ordering production of the investigation files of the district attorney's office, even if protected by the work-product doctrine, because such files are "likely to provide the best evidence" of the alleged police misconduct and the plaintiffs may not be able to obtain the information any other way). Accordingly, Defendants are hereby ordered to produce the First Stoelk Report and associated investigation, including correspondence between Stoelk and the City Attorney relating to Stoelk's investigation.

**4. Waiver**

The Magistrate Judge found that the attorney-client privilege and work-product protection was waived by the statements of the City Attorney to a reporter that an investigation

had been conducted and no wrongdoing was found on the part of the City, and by the City's statement in its Answer that Plaintiff was put on administrative leave while an "investigation" was conducted. The attorney-client privilege is held by the client and an attorney can waive the privilege only if the attorney has the client's implied or express consent to do so. *See, e.g., Himmelfarb v. United States*, 175 F.2d 924, 939 (9th Cir. 1949); *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 459-60 (C.D. Cal. 1978). From the record in this case, it does not appear that the City Attorney had the requisite consent to waive any attorney-client privilege through his statements to the reporter.

For work-product protection, case law is less clear as to whether such protection is held by the client or the attorney. *See, e.g.,* Zacharias, *Who Owns Work Product?*, 2006 U. Ill. L. Rev. 127 (2006) (discussing the lack of authority analyzing whether work product is held by the attorney, the client, or both). Regardless, waiver of work-product protection requires actions disclosing the contents of work-product with conscious disregard of the advantage of the protection such that the disclosure knowingly increases the possibility that an adverse party will obtain and use the material. *In re Doe*, 662 F.2d 1073, 1081 (4th Cir. 1981); *see also U.S. v. Bergonzi*, 216 F.R.D. 487, 497 (N.D. Cal. 2003). Using the contents of work-product offensively in litigation may also waive its protection. *U.S. v. Nobles*, 422 U.S. 225, 239-40 (1975). The City Attorney's statements to the reporter about the investigation and the reference to an investigation in the Answer[1] may not support a finding of waiver in this case. *See, e.g., Meyer v. Colavita, USA, Inc.*, No. SACV 11-00696-AG (MLGx), 2011 WL 2457681 at *4-5 (C.D. Cal. June 17, 2011) (referencing exhaustive laboratory tests and their inconclusive results in court filings, oral statement to the court, and statement to the press not enough to waive work product protection

[1] It is unclear precisely what investigation is being referenced in the Answer, but given the time frame set out in the relevant paragraph in the Complaint, it appears that both the First Stoelk and the Beinert investigations are being referenced in the Answer.

for the tests); *Sullivan v. Warminster Township*, 274 F.R.D. 147, 153-54 (E.D. Penn. 2011) (Chief of Police disclosure to media that report found police shooting was justified did not waive protection for the entire report). However, because this Court finds that the records sought are not subject to the attorney-client privilege and that Plaintiff demonstrated the requisite substantial need and undue hardship to be entitled to the requested information despite any work product protection, this Court need not reach the issue of waiver.

**C. The Second Stoelk Report**

Defendants object to the Revised Order relating to the Second Stoelk Report, arguing that Judge Sullivan failed to analyze the Second Stoelk Report separately from the First Stoelk Report and that any alleged waiver of privilege occurred before the Second Stoelk Report was issued and is therefore not applicable to the Second Stoelk Report. Thus, according to Defendants, the Second Stoelk Report should be protected from disclosure because no waiver applies. This Court rejects Defendant's argument. Contrary to Defendants' assertion, Judge Sullivan did analyze the Second Stoelk Report separately, in Part III of the Revised Order (pages 8-13), and did not apply any waiver analysis to the Second Stoelk Report. Judge Sullivan found, and this Court agrees, that the Second Stoelk Report was not prepared in anticipation of litigation and is thus not protected by the work-product doctrine. Because no protection applies, waiver is not at issue. This Court finds that the Second Stoelk Report is not subject to the attorney-client privilege (for the same reasons that the First Stoelk Report was not protected by the privilege) and ADOPTS the portion of the Revised Order finding that, unlike the First Stoelk Report, the Second Stoelk Report was not prepared in anticipation of litigation and is thus not subject to protection under the work-product doctrine. Because no privilege or other protection applies, and because the Second Stoelk Report is relevant, it must be produced.

Defendants also argue that producing the Second Stoelk report violates Oregon or federal law. This Court has reviewed the Revised Order analyzing the application of Oregon privacy law, federal privacy laws, and the state and federal statutes relating to polygraph examinations and ADOPTS the portion of Judge Sullivan's findings and recommendations relating to this analysis.

The Court notes, in further support of the finding that Oregon privacy laws do not preclude production of the Second Stoelk Report and that production of the report would not subject Defendants to potential civil liability from employees whose information is included in the report, that any confidential status of the report belongs to the City of Hermiston and not to any employee, and that the City can waive its authority to withhold such records. *Oregonian Publ'g Co. v. Portland Sch. Dist. No. 1J*, 152 Or. App. 135, 952 P.2d 66, 69 (Or. App. 1998) ("[W]e conclude that it is the district, and not the affected individuals, that has the right to withhold the disputed report under the public records inspection law. Consequently, the district can waive its right to do that.") (*aff'd on other grounds*, 329 Or. 393, 987 P.2d 480 (1999)). Additionally, reports that bear on the qualifications to serve in a position of public trust are not of a "personal nature" such that they are protected by Oregon's public records exemption. *See Gibson v. Douglas County*, 197 Or. App. 204, 106 P.3d 151, 158-59 (Or. App. 2004) (*citing City of Portland v. Anderson*, 163 Or. App. 550, 988 P.2d 402 (1999) and *Oregonian Publ'g Co. v. Portland Sch. Dist. No. 1J*, 144 Or. App. 180, 925 P.2d 591 (1996) (*adh'd to as modified*, 152 Or.App. 135, 952 P.2d 66 (1998), *aff'd on other grounds*, 329 Or. 393, 987 P.2d 480 (1999)).

**D. The Interview Audio Recordings**

Defendants did not object to the Revised Order's recommendation that Defendants produce the interview tapes, which Judge Sullivan found were not intended to be confidential and thus were not protected by attorney-client privilege or the work-product doctrine. Rev. Ord.

at 8. Defendants' objections were limited to documents found by Judge Sullivan to be protected by privilege or work-product but that such protection had been waived.

This Court has reviewed the Revised Order relating to the interview tapes and ADOPTS the portion of Judge Sullivan's findings and recommendations relating to the non-privileged status and discoverability of the audio recordings. This Court further notes that, to the extent the audio recordings are protected by the work-product doctrine, as discussed above, Plaintiff has demonstrated a substantial need for the information and undue hardship in obtaining it through other means and is entitled to discovery of the audio recordings.

**E. The Documents in the City Attorney's Files**

Neither party objects to Judge Sullivan's recommendation that certain documents in the City Attorney's files are privileged, including email and other correspondence with City officials, claims representatives, and Bischof, the City labor attorney. This Court has reviewed the Orders and the *in camera* documents and ADOPTS the portion of Judge Sullivan's opinion relating to the privileged status of certain documents in the City Attorney's files and ordering production of the non-privileged documents.

## CONCLUSION

The Court ADOPTS IN PART the Magistrate Judge's findings and recommendations, Dkt. 45, as follows: the Court ADOPTS the findings and recommendations GRANTING, in part, Plaintiff's Motion to Compel relating to (1) the Second Stoelk Report; (2) the non-privileged documents in the City Attorney's files; (3) redacted copies of the two pages of the personnel file; and (4) the audio recordings of interviews conducted by Stoelk. Based on the grounds discussed herein, the Court GRANTS Plaintiff's Motion to Compel the First Stoelk Report and related investigation materials. Accordingly, Plaintiff's Motion to Compel (Dkt. 14) is GRANTED, in part and DENIED, in part. The parties may submit a protective order, and the documents may be

produced as confidential under such a protective order but may not be produced for attorney's eyes only.

IT IS SO ORDERED.

Dated this 4th day of February, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge